IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

R. ALEXANDER ACOSTA, Secretary of Labor,

        Plaintiff,

  v.

THOMAS E. POTTS, Jr., et al.,

        Defendants,

  and

GEMINI INSURANCE COMPANY,

        Intervenor

Case No. 2:16-cv-612

Judge Graham

Magistrate Judge Vascura

## OPINION & ORDER

Intervenor Gemini Insurance Company ("Gemini") moves for judgment on the pleadings and moves to dismiss the counterclaims asserted by Defendants Thomas E. Potts, Jr. and Fiduciary Trust Services, Inc. ("FTS"). (Gemini's Mot. J. Pleadings & Mot. Dismiss FTS & Potts's Countercls., Doc. 22). For the reasons discussed herein, Gemini's Motion is **DENIED**.

**I. Factual Background**

The factual background in this matter is derived from the pleadings and documents attached thereto.

  **A. The Underlying Action**

Thomas E. Perez, who at the time was the Secretary of the United States Department of Labor (the "Secretary"), filed this action against Thomas Potts, FTS, and Triple T Transport, Inc. Employee Stock Ownership Plan (the "ESOP")[1]—collectively, "Defendants"—alleging they violated various provisions of the Employee Retirement Income Security Act of 1974

---

[1] An employee stock ownership plan is "[a] type of profit-sharing plan that invests primarily in the employer's stock." *Employee Benefit Plan (-employee-stock-ownership plan)*, Black's Law Dictionary (10th ed. 2014).

("ERISA"), 29 U.S.C. § 1001, et seq. Specifically, the Secretary alleges that Defendants breached their fiduciary duty by causing or allowing the ESOP to purchase 80% of the outstanding stock of Triple T Transport, Inc. ("Triple T") for about $6 million more than it was worth.

Triple T formed the ESOP with an effective date of January 1, 2010. (Pl.'s Compl. at ¶ 13, Doc. 1). Triple T and the ESOP appointed Potts as the "limited purpose trustee of the ESOP 'to ensure that the ESOP's contemplated purchase of a certain number of shares of common stock of [Triple T] . . . is in the best interest of the participants of the ESOP.'" (*Id.* at ¶ 16). The ESOP's plan document "requires that all purchases of stock by the ESOP be made at a price, which, in the judgment of the Trustee, does not exceed the fair market value of the securities, determined by the Trustee in good faith and in accordance with ERISA." (*Id.* at ¶ 18).

Potts retained ComStock Valuation Advisors, Inc. ("ComStock") to prepare a valuation analysis and fairness opinion regarding the ESOP's purchase of Triple T stock. (*Id.* at ¶ 25). ComStock concluded that the fair market value of the 120,000 shares of Triple T stock was $18.34 million. (*Id.* at ¶ 26). The ESOP purchased 120,000 shares of Triple T stock, 80% of Triple T's outstanding shares, for $17,640,000 in January 2011. (*Id.* at ¶ 19). Potts relied on the ComStock opinion in effecting the purchase of Triple T stock.

The Secretary alleges other violations of ERISA that are irrelevant to the resolution of the issues presented here.

### B. Gemini Intervenes

Gemini moved to intervene in the lawsuit on September 20, 2016. (Mot. Intervene, Doc. 10). The Secretary opposed Gemini's intervention. (Resp. in Opp'n, Doc. 13). FTS and Potts responded and did not object. (Defs.' Resp., Doc. 14). The Court granted Gemini's Motion to Intervene, concluding that "Gemini's interest in litigating the nature of Defendants' conduct is a sufficient interest to satisfy the liberal requirements of Rule 24(a)." (Op. & Order at 10, Doc. 18). Gemini then filed an Intervenor Complaint, requesting a declaratory judgment that two insurance policies it issued to FTS and Potts "do not provide coverage for any claims alleged in this action." (Intervenor Compl. at ¶ 36, Doc. 19). Gemini also asserted a claim for breach of contract, citing FTS and Potts's failure to meet the claims-made conditions of the insurance contract. (*Id.* at ¶¶ 38–54).

FTS and Potts filed an Answer to the Intervenor Complaint, along with counterclaims against Gemini. (FTS & Potts's Answer & Countercls., Doc. 20). Gemini then moved for judg-

ment on the pleadings as to its affirmative claims and moved to dismiss FTS and Potts's counterclaims. (Doc. 22).

### C. The Insurance Policies

Gemini issued two policies of professional liability insurance to FTS and Potts. Gemini labeled one policy as "VNPL001356," insured FTS and Potts from September 1, 2014 through September 1, 2015 (hereinafter, "Gemini Policy #1"). (Intervenor Compl. at ¶ 2; Ex. 1, Doc. 19-1). Policy #2, labeled by Gemini as "VNPL001872," insured FTS and Potts from September 1, 2015 through September 1, 2016 (hereinafter, "Gemini Policy #2"). (Intervenor Compl. at ¶ 3; Ex. 2, Doc. 19-2). The policies are identical other than the policy numbers, the period of time covered, and the premium charged.

The policies insured FTS and Potts in their "performance of providing services as a trustee for Employee Stock Ownership Plans for others for a fee." (Gemini Policy #1 at 19). These professional liability insurance policies are called "claims made and reported" policies, "which appl[y] only to claims first made and reported to [Gemini] during the policy period." (*Id.* at PageID 197). This means that Gemini only had to pay on the policy if "1) Written notice of such Claim is received by [Gemini] during the Policy Period or within sixty (60) days thereafter; and 2) Prior to the inception date of this Policy, no Insured knew, nor could have reasonably foreseen, that the Wrongful Acts might result in a Claim." (*Id.*). The policies define a few key terms:

- "'Claim' means: 1. A written demand for Loss or non-monetary relief against an Insured because of a Wrongful Act; 2. Any Suit." (*Id.* at PageID 199).
- "'Loss' means a monetary and compensatory judgment or award which the Insured is legally obligated to pay because of any a covered Wrongful Act, but does not include: punitive or exemplary damages, fines, penalties, the multiplied portion of any judgment or award, or any matter uninsurable under the law pursuant to which this Policy will be construed, nor the return of fees or charges for Professional Services rendered or to be rendered." (*Id.*).
- "'Suit' means any civil judicial, administrative or arbitration proceeding initiated against an Insured because of a Wrongful Act seeking Loss or non-monetary relief against an Insured." (*Id.* at PageID 200).

3

- "'Wrongful Act' means any negligent or unintentional breach of duty imposed by law, or Personal Injury, committed solely in the rendering of Professional Services by an Insured." (*Id.*).

The policies also include "Claim Reporting Provisions":

> A) If a Claim is made against any Insured, the Insured shall provide immediate notice to the Company, and shall forward, as soon as practicable, every demand, notice, summons, complaint or other process or documents received by the Insureds or their representatives.
>
> B) If, during the Policy Period, an Insured becomes aware of a Wrongful Act which may reasonably be expected to subsequently give rise to a Claim, and during the Policy Period, the Insured gives the Company written notice of such Wrongful Act, including a description of the Wrongful Act in question, the identities of the potential claimants, the consequences which have resulted or may result from the Wrongful Act, the Loss which may result from the Wrongful Act, and the circumstances by which the Insured first becomes aware of the Wrongful Act, and requests coverage under their Policy for any subsequently resulting Claim for such Wrongful Act, then the Company will treat any such subsequently resulting Claim as if it had been made against the Insured and reported during the Policy Period, provided that written notice of such Claim is immediately given to the company after it is first made.

(*Id.* at PageID 203). Against this contractual backdrop, the Court reviews what the parties knew, when they knew it, and what they did with that knowledge.

### D. What FTS and Potts Knew and What FTS and Potts Did

Attached to the pleadings are four documents showing what FTS and Potts knew regarding the Department of Labor's investigation into the ESOP and what FTS and Potts did with that knowledge.

One: the December 18, 2014 Tolling Agreement (the "Tolling Agreement"). (Doc. 19-6 at PageIDs 263–68). The Tolling Agreement is an agreement between the Department of Labor and FTS and Potts tolling the statute of limitations and other timeliness defenses to legal proceedings brought under ERISA. (*Id.* at PageIDs 264–67). The Tolling Agreement spells out why it was created:

> WHEREAS, the Secretary has under consideration evidence of possible violations of ERISA by the Respondents in connection with the terms of the refinanced Triple T Transport Employee Stock Ownership Plan pledge agreement between Triple T Transport, Inc. and Triple T Transport Employee Stock Ownership Plan and the valuation of employer securities purchased by the Triple T Transport Employee Stock Ownership Plan (the "Claims"); and

> WHEREAS, this Agreement is entered into in order to provide the Secretary and the Respondents an opportunity to exchange information and, if appropriate, to conduct negotiations relating to the Claims . . . .

(*Id.* at PageID 263).

Two: the March 26, 2015 Demand Letter, as Gemini calls it, (Intervenor's Reply at 3, Doc. 29), or the "Voluntary Compliance Letter," as FTS and Potts call it, (Defs.' Resp. in Opp'n at 2, Doc. 28); (Doc. 19-3 (Letter)). The Court will refer to this as the "VC Notice Letter" because its contents closely resemble those of a template used by the Employee Benefits Security Administration, and the EBSA calls that letter a "V[oluntary] C[ompliance] Notice Letter." *ESBA Enforcement Manual*, Chapter 34, Figure 1, U.S. Dep't of Labor, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/enforcement/oe-manual/chapter-34#figure1 (last visited October 5, 2017). The letter informed FTS and Potts that the EBSA

> has concluded its investigation of the Plan and Triple T Transport, Inc.'s (the "Company") activities as plan administrator and [FTS]'s activities as trustee. Based on the facts gathered in this investigation, and subject to the possibility that additional information may lead us to revise our views, it appears that, the Company as plan administrator and FTS as trustee may have violated several provisions of ERISA. The purpose of this letter is to advise you of our findings and to give you an opportunity to comment before the Department determines what, if any, action to take.

(VC Notice Letter, Doc. 19-3 at PageID 253). The VC Notice Letter goes on to describe in some detail the ESBA's analysis of the various ERISA violations it asserts against FTS and Potts and the Plan. And it does say "violations." For example, "In our view, for the reasons cited above, you are in violation of ERISA and will remain so until: (1) the January 28, 2011, prohibited transaction is corrected; (2) the loan documents are amended to eliminate the prohibited collateral language; and (3) documentation of the correction is provided to this Office." (*Id.* at PageID 258). The VC Notice Letter does not explicitly threaten litigation; its stated purpose "is to advise you of our [the ESBA's] findings and to give you an opportunity to comment before the Department determines what, if any, action to take." (*Id.* at 253). And the ESBA enforcement manual says that the VC Notice Letter "does not threaten litigation." *ESBA Enforcement Manual*, Voluntary Compliance Guidelines at ¶ 8, U.S. Dep't of Labor, https://www.dol.gov/agencies/ebsa/about-ebsa/our-activities/enforcement/oe-manual/chapter-34 (last visited October 5, 2017). But the VC Notice Letter does say that "If the proper corrective

action is taken, the Department will not bring a lawsuit with regard to these issues." (*Id.* at Page-ID 259).

Three: the December 10, 2015 letter from the Office of the Solicitor, noting that the EBSA had referred the matter to the solicitor's office "for consideration of filing an action in federal district court." (Intervenor Compl. Ex. 5 at 1, Doc. 19-5). It mentions the VC Notice Letter and requests the recipients execute a new tolling agreement to replace the December 18, 2014 Tolling Agreement. (*Id.*).

Four: the December 11, 2015 First Notice. FTS and Potts admit that they didn't provide notice to Gemini of any potential claims until December 11, 2015. (FTS & Potts's Answer & Countercls. at ¶¶ 45–46).

**II. Legal Standards**

Gemini moves both for judgment on the pleadings on its claims and to dismiss FTS and Potts's counterclaims. The legal standards applied to both are essentially the same. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

The Court is to construe the pleadings "'in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (quoting *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). Here, the Court construes the pleadings in the light most favorable to FTS and Potts. However, construing the pleadings in favor of the non-moving party does not mean the Court needs to accept the non-movant's "'legal conclusions or unwarranted factual inferences as true.'" *Id.* (quoting *Commercial Money Ctr.*, 508 F.3d at 336). For claims to survive a motion to dismiss, the non-movant must plead "'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A Rule 12(c) motion 'is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991)).

Documents play a key role in this case, even at the pleadings stage. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ.

P. 10(c). Furthermore, even a document "referred to in the pleadings [that] is integral to the claims . . . may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36.

## III. Discussion

The Court's discussion centers on the two policies for insurance issued by Gemini. And Gemini argues that FTS and Potts are between a rock and a hard place. The rock: the fact that FTS and Potts didn't provide notice of any claim during the claims-made period of the first policy. The hard place: the fact that FTS and Potts knew of the possibility of a claim before the start date of the second policy.

> Ohio law guides our determination of the issue. In determining the plain meaning of an insurance contract, the contract should be read as a whole and each word given its appropriate meaning, if possible. Where a policy is ambiguous, it is to be liberally construed in favor of the insured. This rule of construction, however, is not applicable if the language is clear, if applying it, would provide an unreasonable or forced interpretation, or if it would result in an extension of coverage.

*United States v. A.C. Strip*, 868 F.2d 181, 185 (6th Cir. 1989) (internal citations and quotation marks omitted).

You can buy a variety of different policies in the insurance marketplace. Some insurance policies provide coverage for acts that occurred during the policy period regardless of when the claim is brought to the insurer; these are called "occurrence" policies. *Id.* at 184. Other insurance policies provide coverage only for claims brought against the insured during the policy period; these are called "claims-made" policies. *Id.* "Claims made policies, unlike occurrence policies, are designed to limit liability to a fixed period of time. To allow coverage beyond that period would be to grant the insured more coverage than he bargained for and paid for, and to require the insurer to provide coverage for risks not assumed." *Id.* at 187. Most of these "claims-made" policies could be called "claims-made-and-reported" policies, because they require a "claim" to be made against the insured *and* for the insured to "report" the claim to the insurance company within the policy period. *See Wendy's Int'l, Inc. v. Ill. Union Ins. Co.*, No. 2:05-CV-803, 2007 WL 710242, at *7–9 (S.D. Ohio Mar. 6, 2007) (discussing distinction).

### A. Motion for Judgment on the Pleadings

Gemini sold FTS and Potts claims-made-and-reported policies. Gemini Policy #1 (VNPL001356) had a term of September 1, 2014 to September 1, 2015. (Intervenor Compl. Ex. 1

7

at PageID 193, Doc. 19-1). Gemini Policy #2 (VNPL001872) had a term of September 1, 2015 to September 1, 2016. (Intervenor Compl. Ex. 2 at PageID 225, Doc. 19-2). Both policies required FTS and Potts to provide written notice of a claim "during the Policy Period or within sixty (60) days thereafter." (Gemini Policy #1 at PageID 197; Gemini Policy #2 at PageID 228). FTS and Potts provided notice to Gemini of the claims at issue in this case on December 11, 2015, a day after receiving the letter from the office of the Solicitor. (FTS & Potts's Answer & Countercls. at ¶¶ 45–46). Gemini moves for a declaratory judgment that it isn't liable under either policy.

Three reasons dictate why the Court will deny Gemini's motion: (1) ambiguity; (2) the construction of insurance contracts; and (3) the procedural posture of the case. In short, a decision on the reasonableness of FTS and Potts's actions presents factual issues that cannot be determined on a motion for judgment on the pleadings or a motion to dismiss.

One: ambiguity. "Where a policy is ambiguous, it is to be liberally construed in favor of the insured." *A.C. Strip*, 868 F.2d at 185. Contract language is ambiguous "if it is unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning." *Beverly v. Parilla*, 165 Ohio App. 3d 802, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 24 (7th Dist.). And ambiguity in an insurance contract means the Court must construe the contract strictly against the insurer and liberally in favor of the insured. *King v. Nationwide Ins. Co.*, 35 Ohio St. 3d 208, 211, 519 N.E.2d 1380, 1383 (1988). This is especially true when an insurer seeks to exclude a claim. *See U.S. Fid. & Guar. Co. v. Lightning Rod Mut. Ins. Co.*, 80 Ohio St. 3d 584, 586, 1997-Ohio-311, 687 N.E.2d 717, 719 (1997) ("'The insurer, being the one who selects the language in the contract, must be specific in its use; an exclusion from liability must be clear and exact in order to be given effect.'") (quoting *Lane v. Grange Mut. Cos.*, 45 Ohio St. 3d 63, 65, 543 N.E.2d 488, 490 (1989)).

Here, the parties disagree about several terms in the contract, but one sticks out: the conditions precedent clause: "1) Written notice of such Claim is received by [Gemini] during the Policy Period or within sixty (60) days thereafter; and 2) Prior to the inception date of this Policy, no Insured knew, nor could have reasonably foreseen, that the Wrongful Acts might result in a Claim." (Gemini Policy #1 at PageID 197). Specifically, Gemini seeks to exclude FTS and Potts's claim because, Gemini argues, FTS and Potts "could have reasonably foreseen, that the Wrongful Acts might result in a Claim." (*Id.*). Two minds can reasonably differ on what is "reasonably foreseeable."

8

Two: the inquiry required by this type of insurance contract requires a subjective and an objective inquiry, both of which are factual inquiries on which most courts only rule when presented with a motion for summary judgment. *See Prof'ls Direct Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., LPA*, No. 2:06-CV-240, 2009 WL 4281263, at *1 (S.D. Ohio Nov. 24, 2009) (analyzing insurance-coverage issue on a motion for summary judgment).

> The plain language of the insuring agreement employs a mixed subjective-objective analysis to determine whether an insured could "reasonably foresee" that particular acts "might reasonably be expected to be the basis of a **Claim.**" The question of what facts SMRS knew is a subjective inquiry, while the question of whether SMRS could reasonably foresee that these facts might give rise to a claim is an objective inquiry based on a "reasonable insured" standard.

*Schwartz Manes Ruby & Slovin, L.P.A. v. Monitor Liab. Managers, LLC*, 483 F. App'x 241, 245 (6th Cir. 2012).

Here, the language Gemini cites to exclude FTS and Potts's claims from coverage, when construed strictly against Gemini and liberally in favor of FTS and Potts, leaves open the possibility of coverage—that is, it is not clear whether a reasonable insured would have foreseen that these facts might give rise to a claim.

Three: at the pleadings stage, the Court must construe the pleadings in the light most favorable to the party opposing the motion. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). And, the Court can only grant judgment on the pleadings when the movant is "clearly entitled to judgment." *Winget*, 510 F.3d at 581 (quoting *Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 479 F.2d 478, 480 (6th Cir. 1973)). And a party is only clearly entitled to judgment when "'no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* at 582 (quoting *Paskvan*, 946 F.2d at 1235 (6th Cir. 1991)).

Here, there exist material issues of fact and Gemini is not clearly entitled to judgment.

In summary, a decision on the reasonableness of FTS and Potts's actions presents factual issues that cannot be determined on a motion for judgment on the pleadings. Therefore, Gemini's Motion for Judgment on the Pleadings is denied.

### B. Motion to Dismiss for Failure to State a Claim

FTS and Potts asserted five counterclaims against Gemini. (*See* FTS & Potts's Answer & Countercls.). FTS and Potts voluntarily dismissed without prejudice two counterclaims, Counts II and III. (Defs.' Resp. in Opp'n at 16). That leaves Counts I, IV, and V. In Count I, FTS and Potts assert a claim for breach of contract, alleging that Gemini has breached its contractual obli-

9

gations under the two insurance policies by refusing to defend and indemnify FTS and Potts. (FTS & Potts's Countercls. at ¶¶ 21–25, Doc. 20). In Count IV, FTS and Potts request a declaratory judgment that Gemini has a duty—under the insurance policies—to defend and indemnify FTS and Potts. (*Id.* at ¶¶ 35–39, ¶¶ C–D). In Count V, FTS and Potts assert a claim for bad faith, alleging that "Gemini's deliberate, knowing, conscious and/or arbitrary decision to deny its obligations to defend and indemnify FTS and Potts in this lawsuit have been made in bad faith." (*Id.* at ¶ 44; *see id.* at ¶¶ 40–45 (Count V)).

The breach-of-contract claim and the declaratory-judgment claim, Counts I and IV, survive the motion to dismiss for the same reasons why the Court denied Gemini's Motion for Judgment on the Pleadings. There is no need to further discuss these claims.

The only other counterclaim is FTS and Potts's bad-faith claim. But this claim survives.

The tort of bad faith under Ohio law occurs "when an insurer breaches its duty to the insured to act in good faith." *Thomas v. Allstate Ins. Co.*, 974 F.2d 706, 711 (6th Cir. 1992). The test for bad faith "is not whether the [insurer]'s conclusion to deny benefits was *correct,* but whether the decision to deny benefits was arbitrary or capricious, and there existed a reasonable justification for the denial." *Id.* "When the denial of benefits was legally correct under the terms of the applicable insurance policy, it cannot be found that the insurer's denial of benefits was arbitrary or capricious, or that a reasonable justification for the denial did not exist." *Joseph v. State Farm Fire & Cas. Co.*, No. 2:11-CV-794, 2013 WL 663623, at *14 (S.D. Ohio Feb. 22, 2013).

Here, it's not yet clear whether Gemini's denial of benefits was legally correct or whether there existed a reasonable justification for the denial. Therefore, Gemini's Motion to Dismiss FTS and Potts's bad-faith claim is denied.

Therefore, Gemini's Motion to Dismiss is denied. Counts II and II of FTS & Potts's Counterclaims are dismissed pursuant to their voluntary dismissal.

## IV. Stay of Proceedings

With Gemini's Motion denied, the Court also lifts the stay earlier imposed. (*See* Order, Doc. 32). However, the Court will exercise its inherent power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936), and stay proceedings related to

Gemini's claims. Furthermore, the Court orders that Gemini's claims are bifurcated because the issues presented in the insurance-coverage dispute are largely distinct from Plaintiff's claims brought under ERISA. It would be inconvenient, not economical, and it would delay the resolution of Plaintiff's claims in this case to have the insurance-coverage dispute proceed in lock-step with the main case. *See* Fed. R. Civ. P. 42(b).

Gemini's claims are bifurcated and stayed.

**V. Conclusion**

Gemini's Motion for Judgment on the Pleadings and Motion to Dismiss Counterclaims is **DENIED**. (Doc. 22). Accordingly, the stay imposed by Doc. 32 is lifted. Gemini's claims are bifurcated and stayed.

IT IS SO ORDERED.

s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: October 5, 2017